**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Southwest Storage & Distribution Company,<br><br>                    Plaintiff,<br><br>vs.<br><br>Smith's Food & Drug Centers Inc, d/b/a Fry's Food Stores; et al.,<br><br>                    Defendants. | No. CV-03-1785-PHX-NVW<br><br>**ORDER**<br><br>**[Not for Publication]** |

In proceedings in open court on October 3, 2005, the parties stipulated to the quantification of plaintiff's damages under Count 1 of the complaint as $409,178.42. Defendants' right to challenge the court's prior rulings concerning liability is preserved.  By stipulation entered the same date (doc. #70), the parties agreed that the two issues remaining to be decided are the amount of prejudgment interest to which plaintiff is entitled and the amount of attorney fees, costs, and other expenses which plaintiff is entitled to recover. Plaintiff claims 1.5 percent per month as stated in its invoices issued to defendants, and defendants contend the applicable interest rate is the 10 percent simple interest provided by Arizona statute.  The parties agreed that the matter of attorneys fees, non-taxable costs, and expenses is governed by paragraph 28 of the Pick/Managed Operations Agreement, which provides:

If any litigation arises out of the subject matter of this agreement, the prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees (as determined by a Court not a jury) and all related costs and expenses incurred as a result of litigation in addition to such other relief as may be granted.

The parties further agreed to submit the issue of attorney fees, costs, and expenses to the court if they are not able to agree upon a quantification. *Id.* At the October 3, 2005 status conference, the court set a briefing schedule for the submission of briefs and supporting evidence on these questions (doc. #71).

Now before the court are Plaintiff's Motion for Summary Judgment (doc. #72), the Defendants' Brief Regarding Interest Rate and Attorney Fees (doc. #73) and Controverting Statement of Facts (doc. #74), and Plaintiff's Reply (doc. #75). Although plaintiff styled its motion as one for summary judgment, it is clear from the parties' contract and from the October 3, 2005 status hearing that issues of attorney fees, costs, and expenses are to be submitted and have been submitted to the decision of the court as trier of fact. The court finds that the issue of entitlement to and rate of interest can be determined without recourse to any disputed facts.

## I.     Rate of Interest

Arizona statute provides that the rate of interest on any indebtedness, judgment, or other obligation shall be 10 percent per annum, "unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." A.R.S. § 44-1201. Thus, absent some other agreement in writing, the rate of interest on the judgment must be 10 percent per annum, simple interest.

The Pick/Managed Operations Agreement dated October 3, 1999, between the parties provides in paragraph 11.D. that Southwest shall invoice weekly. It further provides, "All invoices are payable upon receipt. If invoices are not promptly paid, Fred Meyer [predecessor to defendant] and Southwest will mutually agree upon late payment fees." Plaintiff claims a rate of 1.5 percent per month, rather than the statutory 10 percent per annum, because its invoices stated, "An interest charge of 1.5 % per month will be charged on all past due sums." This assertion of a higher-than-statutory interest rate was made

1   unilaterally by plaintiff and never agreed to in writing by defendants.  Plaintiff contends,

2   nevertheless, that defendants are chargeable with the higher interest rate stated on the

3   invoices because defendants did not object to it.  The court is unpersuaded for several

4   reasons.  First and most importantly, the parties' Pick/Managed Operations Agreement

5   explicitly provided, as quoted above, that the parties would "mutually agree upon late fees."

6   There is nothing mutual about a unilateral assertion of a higher-than-statutory interest rate.

7   The parties' contract explicitly contemplated communication and actual agreement upon an

8   interest rate.  Of course, in the absence of such communication and agreement in fact, the

9   parties would be left with the statutory interest rate.

10   Second, one party's unilateral claim of a higher interest rate in an invoice does not

11   meet the statutory requirement of "a different rate . . . contracted for in writing."  A.R.S. §

12   44-1201(A).  This is the holding of *Hobart Bros. Co. v. Welding Supply Service, Inc.*, 21

13   Ohio App. 3d 142, 144-45, 486 N.E.2d 1229, 1232 (1985), which stated in interpreting a

14   materially identical statute:

15   An oral statement or a statement on an invoice or bill to which the other party has not
assented does not meet the requirement of R.C.1343.03(A) as to the existence of a

16   written contract between the parties. Here, there is a written contract between the
parties but it does not specify a rate of interest. Instead, the contract specifies only the

17   time at which interest will commence to be charged, namely, when the account
becomes past due. The term "rate of interest" as used in R.C.1343.03(A) refers to the

18   percentage or amount of interest. Where, as here, the contract merely states that
interest will be charged without specifying the percentage or amount of interest to be

19   charged, the contract does not meet the requirement of R.C.1343.03(A) that only a
written contract providing a rate of interest to be charged differing from the statutory

20   rate permits the charging of interest at a rate greater than that provided by the statute.
Since the contract between the parties did not specify a rate of interest with

21   respect to past due accounts, Hobart was limited to the statutory rate of interest upon
the accounts.

22   *Accord Scotts Co. Central Garden & Pet.* 403 F.3d 781, 791 (6th Cir. 2005).

23   Although it was not included in the parties' Stipulation and Joint Status Report

24   description of further issues in dispute, plaintiff now argues that it is entitled to both the 10

25   percent per annum statutory interest rate and the 1.5 percent per month "late fee" stated in

26   the invoice.  Plaintiff's contention that the invoice claims a "late charge" rather than interest,

27   and as such it can be cumulated with the statutory interest rate, is refuted by the language of

28

1   the invoice itself, which refers to the 1.5% per month charge as "interest."  Because the

2   higher interest rate unilaterally claimed in the invoices has not been agreed to in writing by

3   the defendants, it is not due as interest and it cannot be due as a "late fee."

4          Accordingly, plaintiff is entitled to simple interest at the statutory rate of 10 percent

5   per annum on balances 60 days overdue.

6          **II.    Attorney Fees, Costs, and Expenses**

7          The court has considered the briefs and evidence for and against plaintiff's claim of

8   attorney fees in the amount of $116,824.40 through August 31, 2005.  This is the sum of

9   $3,528.40 for the services of Jeffrey R. Simmons through his respective law firms,

10  $11,044.83 for services of Fennemore Craig, and $102,255.17 for services of Horvath &

11  Lieber, PC.

12         Although the quantification of reasonable fees is a matter for the court as trier of fact,

13  defendants have submitted no evidence, by affidavit or otherwise, concerning the reasonable

14  value of fees claimed by plaintiff.  Rather, defendants content themselves with the following

15  unsworn objections:

16         1.     Plaintiff's counsel have "block billed" their descriptions of services rendered,

17  quantifying only the sum for each day for each billing attorney.

18         2.     Because plaintiff retained Chicago counsel, fees and costs associated with his

19  travel to Arizona, pro hac vice admission, and conferences with local counsel are

20  unreasonable.

21         3.     An excessive amount of time was spent on motion practice.  Defendants

22  suggested a 50 hour reduction and a maximum fee award of $75,000.00.

23         4.     The fees for Mr. Simmons ($3,524.40) are unreasonable because plaintiff could

24  have employed Arizona counsel for the entire representation.

25         5.     The fees of Fennemore Craig, $11,044.83 from February 2000 through April

26  2001, are not related to this litigation because they pre-dated this litigation.

27         Defendants' response does not meet the requirement of LRCiv 55.2(f) that it "identify

28  with specificity all disputed issues of material fact and shall separately identify each and

1    every disputed time entry or expense item." This deficiency alone is sufficient to spare the

2    court from laboring through time entry by time entry to surmise how defendants' general

3    objections might or might not apply. There are additional reasons as well for rejecting

4    defendants' objections.

5        Several of defendants' objections are ramifications of their general objection to

6    plaintiff's selection to employ out-of-state counsel rather than Arizona counsel. Litigants are

7    not required to retain local counsel, and plaintiff has sufficiently justified its selection of

8    counsel with experience and expertise helpful for the prosecution of this action. Moreover,

9    plaintiff's counsel's hourly rates are quite reasonable by the standards of the Phoenix market.

10   The additional involvement of plaintiff's local counsel is reasonable and appropriate as well.

11       This case entailed considerable complexity of factual and legal issues. Defendants'

12   summary request for fee reduction is unpersuasive.

13       Plaintiff demonstrated that the research and legal opinion rendered by the Fennemore

14   Craig firm was the predicate for this action and therefore directly related to it.

15       For the foregoing reasons, the court finds defendants' reasonable attorney fees, costs,

16   and expenses  to be in the amount requested, $116,824.40.

17       IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (doc.

18   #72) is granted in part and denied in part. It is granted to the extent that Plaintiff is awarded

19   attorney fees, costs, and expenses in the amount requested, $116,824.40. It is granted and

20   denied to the extent that Plaintiff is awarded pre-judgment and post-judgment interest at the

21   rate of ten percent (10%) simple interest.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1       IT IS FURTHER ORDERED that Plaintiff shall submit by December 21, 2005, a

2  proposed form of final judgment encompassing all claims and awarding interest as provided

3  in this order in stated amounts or showing principal amounts and accrual dates from which

4  the amounts of the past and future interest are ascertainable with clarity.   Counsel are

5  directed to confer and to submit a form of judgment approved as to form if they can agree.

6       DATED this 7th day of December, 2005.

7

8

9  _____

10  Neil V. Wake
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28